UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 JUN 23 PH 3:59

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| LILA MAE PARKER, | } | |
| Plaintiff, | } | |
| v. | } | CASE NO. CV 95-B-1518-S |
| PLANTATION MANOR NURSING HOME, | } } } | |
| Defendant. | } | |

ENTERED

JUN 24 1997

MEMORANDUM OPINION

This matter is before the court on the motion of defendant Plantation Manor Nursing Home ("Plantation Manor" or "defendant") for summary judgment. Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that defendant's motion is due to be granted.

I. FACTUAL BACKGROUND

This case arises from an employment dispute. Plaintiff, Lila Mae Parker ("plaintiff" or "Parker"), began working for Plantation Manor in 1963 as a nurses' aid. (Parker Depo. at 107). In 1967, plaintiff received her Licensed Practical Nurse ("LPN") license, and thereafter, she worked for Plantation Manor as an LPN. (Id. at 124).

On four occasions beginning in 1992 and ending in early 1993, Plantation Manor's former Executive Director, William G. Allen, Jr. ("Allen"), allegedly made statements in plaintiff's presence on the subject of age. (Parker Depo. at 42, 51-54).[1] Allen began by

---

[1] Although Allen denied making the statements, (Allen Aff. at ¶ 13), for summary judgment purposes, the court assumes that Allen made the comments at issue.

telling Plaintiff that "he had to have a younger doctor," and, stating, that he needed a younger doctor to work with him for the next twenty years. (*Id.* at 23, 33). Allen then told plaintiff on three occasions that he needed to eliminate the older employees and move on with younger employees because he was going to be at Plantation Manor for twenty years. (*Id.* at 53-54).

In the summer of 1993, several months after the last of the alleged statements by Allen, LPN Virginia Knight reported to Allen that she had seen plaintiff verbally abuse a patient. (Allen Depo. at 25-27; Allen Aff. at ¶ 5). Allen conducted an investigation, but could not substantiate the allegation. (Allen Depo. at 27). Allen did not report the abuse allegation to any state regulatory agency, although he admitted that he probably should have. (Allen Depo. at 29-30).

In October of 1993, Rachel Noble ("Noble"), a Certified Nursing Assistant ("CNA"), witnessed plaintiff slap a nursing home resident on the leg. (Noble Aff. at ¶ 6). Shortly after the incident occurred, Noble told another CNA, Eula Savage (Savage"), that she had seen plaintiff slap a patient on the leg. (Noble Aff. at ¶ 8). Noble did not immediately report the incident to a supervisor because she feared retaliation by Parker, but about a week after the incident, Noble informed Jan Hamaker ("Hamaker"), a Registered Nurse ("RN"), that she had seen plaintiff strike a patient. (Hamaker Depo. at 43-45; Noble Aff. at ¶ 9). Hamaker reported the allegation to the Director of Nursing, Louise Parker, who along with Hamaker, reported the incident to Allen. (Hamaker Depo. at 46-47; Allen Depo. at 44).

Allen began an investigation into the abuse report. (Allen Aff. at ¶ 7). He interviewed Noble and she informed Allen that she had seen plaintiff strike a patient. (*Id.*) Based on

Noble's demeanor during the interview, Allen formed the opinion that Noble was sincere in her accusation against Parker. (*Id.*)

During the investigation, Allen interviewed several Plantation Manor employees. (Allen Depo. at 65-66; Allen Aff. at ¶¶ 7 & 8). He confirmed with Savage that Noble had discussed the details of the incident with her. (Allen Aff. at ¶ 7; Savage Aff. at ¶ 4). LPN Pearlie Shackelford, who was in the patient's room when the incident occurred, could neither support nor refute the allegation of patient abuse.[2/] Additionally, during the course of his investigation, other employees informed Allen that they had witnessed plaintiff act in a verbally abusive manner towards patients in the past.[3/] (Allen Aff. at ¶ 8).

On or around November 4, 1993, Allen discharged plaintiff. (Am. Compl. at ¶ 8).[4/] Allen later notified the Alabama Board of Nursing ("Board of Nursing") of the incident. (Allen Aff. at ¶ 8). The Board of Nursing and the Alabama Department of Public Health conducted investigations of the incident, and both agencies upheld the allegation of patient abuse against plaintiff. (Exs. Q, R, and S to Def.'s Mot. for Summ. J.). Plaintiff did not

---

[2/] Plaintiff claims that the statement Shackelford gave to an investigator from the Alabama Department of Public Health contradicts Noble's allegation that plaintiff struck a patient. The court disagrees. Shackelford told the investigator that she heard a "slap" while her back was turned to the patient, but that she did not see whether plaintiff struck a patient or whether a patient struck plaintiff. (Exhibit O to Def.'s Mot. for Summ. J.). In any event, Shackelford's version of the events is not inconsistent with Noble's allegation that plaintiff struck a patient.

[3/] These other employees included Bridgett Green, Dorothy Griffice, and George Boyd. (Allen Depo. at 38, 80-83).

[4/] Following her discharge, plaintiff filed for unemployment benefits with the Alabama Department of Industrial Relations ("DIR"). (Parker Depo. at 239). The DIR, however, denied plaintiff unemployment benefits, determining that she had been discharged for "striking a patient." (Ex. P to Def.'s Mot. for Summ. J.). Plaintiff did not appeal this determination. (Parker Depo. at 243).

3

appeal these determinations. (Parker Depo. at 252). On June 12, 1995, plaintiff filed this lawsuit against Plantation Manor, alleging that her termination constituted a violation of the Age Discrimination in Employment Act ("ADEA") and the tort of outrage.

## II. SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* FED.R.CIV. P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Rule 56 (c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted); *accord Spence v. Zimmerman*. 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive

4

evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

#### A. Plaintiff's ADEA Claim

Congress passed the Age Discrimination in Employment Act, in part, "to promote employment of older persons based on their ability rather than age." 29 U.S.C. § 621(b). Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In order to prevail on an ADEA claim, the plaintiff must first establish a prima facie case of discrimination by using one of three methods of proof: (1) producing direct evidence of discriminatory intent; (2) meeting the test originally set out for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); or (3) by showing statistical proof of a pattern of discrimination. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045

(11th Cir. 1989).[5/] In the instant case, plaintiff has offered neither direct evidence of discriminatory intent nor statistical proof of a pattern of discrimination, and as a result, plaintiff concedes that the *McDonnell Douglas* formulation is the applicable method of proof.[6/]

Under the framework established by the Court in *McDonnell Douglas* and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of "legitimate, nondiscriminatory reasons for the challenged employment action." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citations omitted). Defendant's burden, however, has been characterized by the Eleventh Circuit as "exceedingly light." *Perryman v. Johnson Products Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983). "The defendant need not persuade the court that it was actually motivated by the proffered reasons, but it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254.

"Once defendant states a legitimate reason, plaintiff must show that defendant's articulated reason is merely a pretext and that defendant's true reason for discharging plaintiff was discrimination." *Rollins v. Techsouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). "[The plaintiff] may succeed in this either directly by persuading the court that a discriminatory

---

[5/] Although these methods for establishing a prima facie case were largely developed in the context of Title VII litigation, "[t]he Eleventh Circuit has adapted to issues of age discrimination the principles of law applicable to cases arising under the very similar provisions of Title VII." *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993) (citation omitted).

[6/] Although plaintiff claims that she has presented direct evidence of discriminatory intent in the statements that she attributes to Allen, she concedes that the *McDonnell Douglas* test is applicable. (Pl.'s Corrected Br. in Opp'n to Def.'s Mot. for Summ. J. at 3).

reason more likely motivated the employer or *indirectly by showing that the employer's proffered explanation is unworthy of credence. Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256) (alteration and emphasis in original). "[A] plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable." *Howard v. B.P. Oil Co.*, 32 F.3d 520, 526 (11th Cir. 1994).

In the instant case, defendant assumes without conceding, that sufficient evidence exists for plaintiff to establish a prima facie case under the *McDonnell Douglas* formulation. Additionally, plaintiff concedes in her brief that defendant has articulated a legitimate, nondiscriminatory reason for discharging plaintiff. Thus, the issue before the court is whether plaintiff has produced sufficient evidence to permit a reasonable jury to find that defendant's reasons for terminating plaintiff were a pretext for discrimination. To answer this question, the court must identify the reasons defendant offers for terminating plaintiff.

In November 1993, Allen received a report that plaintiff had physically abused a patient. (Allen Aff. at ¶ 7). Thereafter, Allen investigated the matter by interviewing several staff members, the most significant being Rachel Noble, the individual who allegedly witnessed plaintiff strike the patient. (*Id.*) Based on Noble's demeanor during the interview, Allen formed the opinion that Noble was sincere in her accusation against plaintiff. (*Id.*)

Allen also spoke to another Plantation Manor employee, Eula Savage, and she told Allen that Noble had previously informed her about plaintiff striking a patient. (*Id.*) Furthermore, during his investigation, three other employees -- Bridgett Green, Dorothy Griffice, and George Boyd -- informed Allen that plaintiff had been verbally abusive to

7

patients in the past. (*Id.* at ¶ 8). Consequently, "because of the substantiated report of physical abuse, and the reports of verbal abuse" that he "received during the investigation," Allen "reluctantly discharged Ms. Parker." (*Id.*)

Plaintiff offers several arguments in an attempt to demonstrate pretext, the first being an attack on the reasons offered by defendant for terminating plaintiff. In its position statement submitted to the Equal Employment Opportunity Commission ("EEOC") defendant stated that "[a]fter investigation by William G. Allen, Jr., three infractions were cited for cause of termination:

> D. Violation of any aspect of the Patient Bill of Rights.
> K. Cursing or the using of abusive or foul language while on duty or on the premises.
> U. Demonstrations of rudeness to residents, guests, visitors or sponsors, either orally or by action.

(Ex. 6 to Pl.'s Evid. Material in Supp. of Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 1). Furthermore, in responding to an interrogatory in which plaintiff asked defendant to state each and every reason that the plaintiff was terminated and/or discharged by defendant, defendant stated:

> Plaintiff basically was terminated for resident abuse consisting of, for example, violating the Patient Bill of Rights, cursing or using abusive or foul language while on duty or on the premises, and demonstrations of rudeness to residents, guests, visitors, or sponsors, either orally or by action. The decision to terminate plaintiff was made by the administrator, William G. Allen, Jr. No other employee participated in the decision to terminate plaintiff. Mr. Allen received a report of patient abuse, investigated the report, and made the decision to terminate plaintiff.

(*Id.* at Tab 7).

8

After citing both of these statements, plaintiff argues that "[i]n the two opportunities that the defendant had to specifically state that the plaintiff was terminated because of patient abuse, the defendant failed to so state this fact." (Pl.'s Corrected Br. in Opp'n to Def.'s Mot. for Summ. J. at 7). Plaintiff continues by arguing that "what is absolutely astounding is that when one examines the defendants Exhibit "E" (Plantation Manor Employee Handbook), it will find that "resident abuse" is specifically listed as a reason for possible termination. If in fact the plaintiff was terminated for "resident abuse", then why would the defendant fail to cite the EEOC or the plaintiff's attorney to reason "P" in its Employee Handbook?" (*Id.*) Although plaintiff is correct in asserting that reason "P" in the Plantation Manor Employee Handbook lists "resident abuse" as a reason for employee termination, the court is of the opinion that defendant's failure specifically to cite reason "P" as a justification for terminating plaintiff is insufficient to establish that the reasons given by defendant were pretextual.

First, in defendant's position statement submitted to the EEOC, Allen stated: [I]t was brought to my attention . . . that an allegation of possible patient abuse was made towards Lila M. Parker, LPN. Upon subsequent investigation, . . . it was determined that I had no alternative but to terminate Lila M. Parker, LPN, immediately." (Ex. 6 to Pl.'s Evid. Material in Supp. of Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 2). Second, and as noted by defendant in its Reply Brief, in the answer to the interrogatory quoted above, defendant stated: "Plaintiff basically was terminated for resident abuse . . . ." Thus, based upon the foregoing, the court agrees with defendants statement that "[f]or plaintiff to claim that Plantation Manor failed to identify patient abuse as the reason for her discharge ignores the contents of the very documents plaintiff submitted in support of her position . . . ." (Def.'s Reply Br. at 3).

9

Plaintiff also attempts to demonstrate pretext by arguing that the "ageist comments" made by defendant are the "clearest evidence of defendant's discriminatory intent." (Pl.'s Corrected Br. in Opp'n to Def.'s Mot. for Summ. J. at 16). As noted earlier, on four occasions beginning in 1992 and ending in early 1993, Allen made statements in plaintiff's presence on the subject of age. (Parker Depo. at 42, 51-54). Examples of such statements include Allen's declaration that "he had to have a younger doctor", and that he needed to eliminate the older employees because he was going to be at Plantation Manor for twenty years. (*Id.* at 23, 33, 53-54). Plaintiff contends that the four age-related comments "are indicative of discrimination on the basis of age." (Pl.'s Corrected Br. in Opp'n to Def.'s Mot. for Summ. J. at 16). The court disagrees.

In *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526 (10th Cir. 1994), the Tenth Circuit had occasion to address whether a number of age-related comments were sufficient to demonstrate that the defendant's decision to terminate plaintiff was based upon discriminatory factors. In holding that the statements were insufficient to create a jury issue, the court stated: "Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions." *Id.* at 531 (citations omitted). Instead, the plaintiff "must demonstrate a nexus exists between these allegedly discriminatory statements and the hospital's decision to terminate her." *Id.* (citations omitted). Likewise, in the instant case, the court is of the opinion that the comments made by Allen are isolated and too remote in time to support a conclusion that Allen intended to discriminate against plaintiff based upon her age.

First, as to the isolated nature of the comments, the statements occurred on four occasions in 1992 and early 1993. (Parker Depo. at 42, 51-54). Other than these four

10

comments, Allen made no age-related comments to plaintiff during the more than three years they worked together. (Parker Depo. at 54). Moreover, with the exception of plaintiff's deposition testimony, there is no evidence that Allen ever made any other age-related comments during the time in which he was employed at Plantation Manor. Second, the alleged statements were so remote in time that they cannot be considered probative of Allen's intent at the time he discharged plaintiff. Viewing plaintiff's deposition testimony in the light most favorable to her, the last of the statements was made more than seven months before Plantation Manor discharged plaintiff.[2/] Because the statements were not made in the relevant time period, the court is of the opinion that such statements are unrelated to defendant's decision to terminate plaintiff.

Finally, the court notes that the events of the summer of 1993 substantially detract from the probative value of the statements. Several months after Allen allegedly made the last age-related statement to plaintiff, LPN Virginia Knight reported plaintiff for patient abuse. (Allen Depo. at 25-27; Allen Aff. at ¶ 5). If Allen had been searching for a pretext for discharging plaintiff because of her age, the abuse report in the summer of 1993 presented an ideal opportunity. However, Allen did not discharge plaintiff at that time, nor did he even report the allegation of patient abuse to the state authorities, as he admitted he should have done. (Allen Depo. at 29-30). Because the court is of the opinion that plaintiff has failed to "demonstrate a nexus between [the] allegedly discriminatory statements and [Plantation

---

[2/] According to plaintiff's testimony, the statements were made about a month apart beginning in 1992 and ending in 1993. (Parker Depo. at 42, 51-54). Viewing this evidence most favorably to plaintiff, the last statement would have been made, at the latest, in March of 1993.

Manor's] decision to terminate her," *Cone*, 14 F.3d at 531, the court concludes that the four, age-related statements are insufficient to establish pretext.

Plaintiff cites several cases in support of her proposition that comments regarding age may be probative when taken in conjunction with the context in which they are uttered. *See Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1112 (9th Cir. 1991); *Owens v. New York City Housing Auth.*, 934 F.2d 405, 408 (2d Cir. 1991); *Normand v. Research Inst. of America, Inc.*, 927 F.2d 857, 863-64 n.4 (5th Cir. 1991). Upon a review of these cases, the court concludes that they are distinguishable in that in each of the above-cited cases, unlike in the present case, the comments at issue related specifically to each of the plaintiffs. *See Sischo-Nownejad*, 934 F.2d at 1112; *Owens*, 934 F.2d at 408; and *Normand*, 927 F.2d at 864. For, example in *Sischo-Nownejad*, in addition to other derogatory remarks indicating age and gender bias, plaintiff's superiors referred to her as "an old warhorse" and to her students as "little old ladies." *Id.*, at 1112. Similarly, in *Owens*, an individual with substantial influence over plaintiff's employment told plaintiff that her problems had to do with her age and entry into menopause. *Id.* at 407 & 410. Here, however, the comments made by Allen were of a general nature and were not addressed in reference to plaintiff specifically. Thus, because the requisite nexus between the statements and the employment decision at issue is lacking, the court concludes that the cases relied upon by plaintiff are inapplicable to the facts and circumstances of the instant case.

Plaintiff also claims that summary judgment is precluded because she disputes the accusation of patient abuse. However, whether plaintiff actually committed patient abuse is irrelevant in determining whether Plantation Manor's stated reason was a pretext for discrimination. Under the ADEA, the inquiry "is limited to whether [Allen] *believed* that

[plaintiff committed patient abuse], and if so, whether this belief was the reason behind [her] discharge." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (emphasis in original).

The evidence establishes that Allen discharged plaintiff because he believed she had engaged in patient abuse. Allen did not initiate the process that led to plaintiff's discharge; he merely responded to a report of patient abuse. If every witness Allen interviewed lied to him, it shows only that his belief was incorrect, not that plaintiff's discharge was motivated by an improper purpose. The trial court's responsibility is "not to second guess the wisdom of [defendant's] reasoning, but to determine if the reasons given were merely a cover for a discriminatory intent." *Brown v. American Honda Motor Co.*, 939 F.2d 946, 951 (11th Cir. 1991), *cert. denied*, 502 U.S. 1058 (1992). Thus, because there is no evidence to contradict that Allen received a report of patient abuse against plaintiff, investigated the report, received information substantiating the report, learned of other allegations of abuse against plaintiff, and concluded that plaintiff had committed patient abuse, the court concludes that a reasonable jury could not find that plaintiff has presented sufficient evidence of pretext.[8]

---

[8] Plaintiff focuses on an incident at Allen's deposition that she claims establishes Allen's lack of credibility. At the end of Allen's deposition, the following exchange took place between Allen and plaintiff's counsel:

> Q: If, in fact, Lila Mae Parker's age had something to do with your decision, would you sit here and tell us it did?
> A: No.

(Allen Depo. at 125). Allen, however, immediately reiterated that plaintiff's age had nothing to do with his decision, and his attorney clarified that he understood the question to be asked in a "tongue-in-cheek" manner. (*Id.*, at 126). Allen further testified that he was aware that he was under oath and that the truth was that plaintiff's age had nothing to do with his decision to

13

### B. Plaintiff's Claim of Outrage

Alabama law imposes tort liability against one "who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *American Road Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980). However, "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" will not support a claim of outrage. *Inmon*, 394 So. 2d at 364-65. To recover for the tort of outrage, a plaintiff must, at a minimum, satisfy two criteria. First, plaintiff must show that the conduct complained of was "extreme and reckless." *Thomas v. BSE Indus. Contractors, Inc.*, 624 So. 2d 1041, 1043 (Ala. 1993). The conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Inmon*, 394 So. 2d at 365. In the instant case, there is no evidence that defendant mistreated plaintiff during the time she was employed there. Plantation Manor investigated a report it received, as it was obligated to do by federal regulations, and discharged plaintiff after substantiating the report. (*See* Allen Aff.). Plantation Manor's actions in this regard do not rise to the level of being utterly intolerable or atrocious.

Additionally, the tort of outrage also requires the plaintiff to suffer emotional distress "so severe that no reasonable person could be expected to endure it." *Inmon*, 394 So. 2d at 365. After reviewing the evidence, the court concludes that plaintiff has failed to produce any

---

terminate plaintiff. (*Id.*, at 126-27). Nothing in this exchange is sufficient to cast any reasonable doubt on Allen's testimony that he discharged plaintiff for patient abuse following his investigation into Noble's report.

14

evidence of such emotional distress. Thus, for these reasons, defendant is entitled to summary judgment on plaintiff's outrage claim.

## CONCLUSION

Based upon the foregoing analysis, the court holds that there is no genuine issue as to any material fact and defendant is entitled to a judgment as a matter of law. An Order granting defendant's motion for summary judgment shall be entered contemporaneously herewith.

DONE this 23rd day of June, 1997.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
United States District Judge